IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**CECELIA JACKSON,**
    Plaintiff,

v.                                            No:  1:05cv63/MP/MD

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**
    Defendant.
_____

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Jackson's application for Supplemental Security Income (SSI) benefits under Title XVI of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff filed an application for SSI benefits on April 28, 1997 alleging disability beginning November 1, 1993.  Her application was denied initially and on

reconsideration and she requested a hearing before an Administrative Law Judge (ALJ). After several postponements, due in part to plaintiff's incarceration, a hearing was held on May 8, 2002. At the hearing plaintiff's counsel amended the alleged onset date to April 28, 1997. The ALJ rendered an unfavorable decision on September 24, 2002 (Tr. 15-31) and the Appeals Council declined review (Tr. 5-7), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court. *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had impairments of depression and upper extremity problems which were severe and which, when combined with her substance addiction disorder to alcohol and drugs, imposed disabling limitations upon her ability to work; that her substance addiction disorder was a contributing factor material to the determination of her disability; without the plaintiff's substance addiction disorder her other impairments are not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4; that plaintiff's allegations concerning her limitations were not totally credible; that plaintiff has the residual functional capacity, absent cocaine and alcohol abuse, to perform a range of light work on a sustained basis and that if she were abstinate from alcohol and drugs, she could perform past relevant work as a cafeteria counter attendant and fast food worker; that there are other jobs that exist in significant numbers in the national economy that she could perform but for her drug and alcohol addiction; and that she is not under a disability as defined in the Act absent her alcohol and drug abuse. However, her substance addiction disorder is a contributing factor material to the determination of her

disability and she therefore cannot be found disabled for purposes of the Act and cannot receive SSI benefits.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence.  *Falge, supra*.  The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles.  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).  In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision.  *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted).  Findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Case No: 1:05cv63/MP/MD

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps.  A finding of disability or no disability at any step renders further evaluation unnecessary.  The steps are:

1.  Is the individual currently engaged in substantial gainful activity?

2.  Does the individual have any severe impairment?

3.  Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.  Does the individual have any impairments which prevent past relevant work?

5.  Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Chester v. Bowen,* supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner.  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

The medical record in this case is lengthy.  It consists primarily of records from the Alachua County Health Department and medical records from the Florida Department of Corrections.  It is not necessary for purposes of this Report and Recommendation to go through the records in detail.  What they disclose in essence is that plaintiff has been addicted to alcohol and crack cocaine throughout her teenage years and her adult life but has failed to overcome her addiction.  Thus for

example, she was admitted for inpatient treatment in September 1997 (Tr. 739-747); in October 1997 and left against medical advice (Tr. 757-758); in September 1998 (Tr. 752); in March 2000 (Tr. 748-749); in April 2002 (Tr. 974); and in June of 2002, only a month before her final hearing (Tr. 850). Although there have been very short periods in which plaintiff has remained clean and sober, she has otherwise consistently failed to benefit from her inpatient treatment. During her last hospitalization at the V A Hospital in Gainesville, her discharge diagnosis was substance induced mood disorder and cocaine abuse (Tr. 850). As noted earlier, this was a month before her final hearing.

Records from the Alachua County Jail and Florida Department of Corrections indicate that plaintiff was incarcerated between July 1988 and December 1999 and was presumably clean and sober during that period. But the record also shows that after discharge she continued her drug and alcohol use substantially as before.

In addition to the voluminous treatment records, plaintiff was examined by three consultative physicians. The first, Michael Amiel, M.D., a psychiatrist, examined plaintiff on October 12, 2001. Dr. Amiel concluded that plaintiff was "partially compromised in terms of doing work-related activities because of her substance abuse issues and characterological disturbance." (Tr. 825). Dr. Amiel's diagnostic impression was depressive disorder not otherwise specified with polysubstance dependence and personality disorder not otherwise specified (Tr. 817-825). A week later plaintiff was given a neurological evaluation by Ivan Lopez, M.D., because of numbness in her hands and a claim of carpal tunnel syndrome. Dr. Lopez determined that on examination plaintiff did not have neurological difficulties consistent with carpal tunnel syndrome, although that was possible. Also possible was chronic alcoholic neuropathy. Dr. Lopez recommended a nerve conduction study which apparently was not done. Dr. Lopez filled out a medical source statement on ability to do work-related activities which placed no significant

limitations on plaintiff's ability to work (Tr. 830-833).  In any event, Dr. Lopez indicated that plaintiff needed help with her alcohol drinking habit (Tr. 829).

Plaintiff was also examined by Linda Abeles, Ph.D., a licensed psychologist. Dr. Abeles' diagnostic impression was polysubstance dependence and personality disorder NOS with antisocial and borderline traits.  She noted that plaintiff was homeless and was continuing to abuse alcohol, most recently three days prior to the evaluation (Tr. 834-837).

In April 2002 plaintiff was in Illinois visiting family when she was hospitalized and given a psychiatric evaluation by James Smedegard, M.D.  Dr. Smedegard's impression was cocaine/alcohol abuse, rule out dependence because it is not otherwise specified, rule out major depression versus substance abuse, psychosis not otherwise specified, rule out substance induced.  This particular hospitalization was three months before her final hearing, and two months before her VA hospitalization.

## DISCUSSION

The plaintiff argues that the ALJ erred in finding that her drug abuse and alcoholism were contributing factors material to the determination that she is disabled.  The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained.  The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of her physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

As noted above, the ALJ found that plaintiff was disabled because of her addictions, but that if she did not drink or use drugs, she would not be disabled.  In 1996 Congress enacted Pub. L. 104-121 as part of the "Contract With America." Section 105 provides that as to both disability benefits and SSI claims, "[an]

individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." The Commissioner has interpreted the language of the amendment by finding that drug addiction or alcoholism is "material" if the individual would not still be found disabled if alcohol or drug use were to cease.  20 C.F.R. §§ 404.1535, 416.935.  The claimant has the burden of proving that she would still be disabled even if she were to stop using alcohol or drugs.  *Doughty v. Apfel,* 245 F.3d 1274 (11th Cir. 2001).

In opposition to the ALJ's findings, plaintiff makes two points.  First, she says that the ALJ disregarded notes in the medical record that shows she has disabilities in spite of her addictions.  Second, she argues that the ALJ did not pose a proper hypothetical question to the vocational expert, and therefore cannot have properly relied on the vocational expert's testimony.

1. **Favorable medical records.**

Out of the hundreds of pages of medical records detailing plaintiff's continuing abuse of alcohol and crack cocaine, plaintiff points to four entries which she says supports her claim that she is disabled notwithstanding her addictions. These are (1) a 1993 note from the county clinic stating that plaintiff wanted something for her nerves, was in group therapy and had consumed no alcohol in three months, (2) a 1997 county health department note that plaintiff was a "37 year old with history of rape, previous spousal abuse victim, suicidal previously with mixed substance abuse, depression, bipolar, and anxiety attacks.  Has been sober on her own" (Tr. 172), (3) a 1997 note from the health department stating that plaintiff was having problems with her hand, and (4) a 1997 letter from the health department stating that the plaintiff "is currently unable to work due to severe anxiety and right median nerve impingement."   (Tr. 162).  From this, without any analysis or elaboration, plaintiff says that "[a]t all times relevant to this case, various physicians

have found [plaintiff] to be incapable of substantial gainful activity on her long history of mental health and physical impairments not her alcohol and drug use." (Doc. 16, p. 17).

If there are any such findings, the undersigned has not located them, and other than the scattered, and very old, notations noted above, plaintiff has not pointed to any. None of the noted entries support plaintiff's position. They are mostly simply notations of plaintiff's version of her condition. The "cannot work" letter is a hand written note that makes no reference to any findings. In fact, the clinic record dated the same day as the letter indicated (as it had often before) that plaintiff had discontinued all substance use for one month (Tr. 161). That may have been true in 1997, but plaintiff's abstinence did not last. Plaintiff was hospitalized for her addiction in Illinois and again at the VA Hospital within the three month period before her final hearing. Since 1997 plaintiff's anxiety has many times been attributed to her constant abuse of alcohol and crack cocaine. Moreover, Dr. Lopez opined that plaintiff's problems with her hands were not consistent with carpal tunnel syndrome, and were possibly caused by chronic alcoholic neuropathy.

"[I]n disability determinations for which the medical record indicates alcohol or drug abuse, the claimant bears the burden of proving that the substance abuse is not a contributing factor material to the disability determination . . . ." *Doughty,* 245 F.3d at 1281. Plaintiff here has not pointed to any considered opinion by any treating or examining physician that plaintiff would be disabled without her addictions. The overwhelming evidence shows exactly the opposite.

    2.    <u>Hypothetical question.</u>

Plaintiff's also argues that the hypothetical question posed to the vocational expert was incomplete, because it did not contain limitations that the plaintiff would, due to her depression, call in and miss work three days per week. (Doc. 16, p. 17). Plaintiff further argues that the ALJ's hypothetical did not include the condition that

plaintiff had marked difficulties in activities of daily living, in maintaining social functioning, in maintaining concentration, persistence or pace, and evidence of repeated episodes of decompensation." A hypothetical question must comprehensively describe the plaintiff's condition, and vocational expert testimony that does not accurately address that condition cannot be considered substantial record evidence. *Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985).

It need hardly be repeated that all of plaintiff's mental problems stemmed directly from her alcohol and drug abuse, and plaintiff has not pointed to any supportable argument otherwise. Thus, whether these mental problems were included in the hypothetical is irrelevant. If they had been, plaintiff would have been disabled because of her addictions, not because of any independent mental health issues.

Plaintiff has failed to show that the ALJ erred in reaching his decision. Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 3rd day of April, 2006.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**
**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. <u>Any different time that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636;** *United States v. Roberts,* **858 F.2d 698, 701 (11th Cir. 1988).**